## 10620

### BUTLER v. SPENCER.

(107 S. E. 154)

1. PLEDGES—INDORSER, TO WHOM COLLATERAL WAS PLEDGED, HELD CHARGED WITH TRUST IN FAVOR OF ANOTHER INDORSER.— Where, at the time plaintiff and defendant indorsed a note made by a third party, the maker's wife executed an instrument pledging certain collateral to plaintiff to secure him and defendant for their indorsement, and to secure plaintiff on other indorsements for the same maker, and the maker did not pay the notes, plaintiff, in disposing of the securities and applying the proceeds, was charged with a trust requiring from him more than the ordinary diligence which a man might use in his own affairs.

2. CONTRIBUTION—INDORSER TO WHOM COLLATERAL SECURITY WAS PLEDGED HELD GUILTY OF SUCH CARELESSNESS AS DEFEATED CONTRIBUTION.—Where plaintiff and defendant indorsed a note of plaintiff's brother-in-law, who was the principal stockholder, president, and cashier of a bank, of which plaintiff was director, and the maker's wife pledged securities to plaintiff to secure the indorsers, plaintiff *held* guilty of such gross carelessness in connection with the management of the bank, depreciating the value of the securities, in collecting the securities and disposing of their proceeds, and in winding up the affairs of the bank as its receiver, as defeated his right to require contribution from defendant.

3. RECEIVERS—PERSON NOT PARTY TO RECEIVERSHIP PROCEEDINGS NOT BOUND THEREBY.—Where defendant, who was a co-indorser with plaintiff on a note, and to secure whom bank securities were pledged to plaintiff, was not a party to proceedings to wind up the affairs of the bank of which plaintiff was appointed receiver, he was not bound by the Court's approval of plaintiff's acts as receiver.

4. PLEDGES—INDORSER, TO WHOM SECURITIES WERE PLEDGED, BOUND TO APPLY PROCEEDS ON NOTE BEFORE PAYING OTHER DEBTS.—Where plaintiff and defendant were co-indorsers on a note, and securities were pledged to plaintiff to secure the indorsers, it was plaintiff's duty to apply the proceeds of such securities to the payment of the note, before paying other debts not mentioned in the instrument by which the securities were pledged.

5. BANKS AND BANKING—RECEIVER HELD NOT ENTITLED TO COMMISSIONS ON MONEYS COLLECTED FROM HIMSELF, ETC.—A receiver of a bank was not entitled to commissions on moneys, either collected from himself, or on notes in his hands, or on notes collected by others, to whom they had been assigned as collateral for the debts of the bank.

6.  PLEDGES—TRANSACTIONS OF INDORSERS TO WHOM SECURITIES WERE
    PLEDGED CLOSELY SCRUTINIZED, WHEN THE AFFAIR WAS A FAMILY
    ONE ON HIS SIDE.—Where plaintiff and defendant were indorsers
    on the note of plaintiff's brother-in-law, who was the principal stock-
    holder, president, and cashier of a bank in which plaintiff and an-
    other brother-in-law were directors, and the maker's wife pledged
    securities of the bank to secure the indorsers, and plaintiff sub-
    sequently became receiver of the bank, the  manner in which the
    business had been manipulated would be closely scrutinized; there
    being a family affair on one side and an innocent stranger on the
    other.

7.  TORTS—PERSON NOT PERMITTED TO TAKE ADVANTAGE OF OWN WRONG.
    —A party may not take advantage of his own wrong, to the injury
    of an innocent person; such a position being repugnant to equity
    and justice.

Before MAULDIN, J., Oconee, August, 1919.  Affirmed.

Action by D. P. Butler against Thomas A. Spencer as a
co-indorser for contribution.  From judgment for defend-
ant the plaintiff appeals.

The decree rendered below by Judge Mauldin, mentioned
in the opinion, was as follows:

The above entitled case was heard by me at the July term,
1919, of the Court of Common Pleas for Oconee County
upon the issues joined and testimony taken before the Mas-
ter.  It is an action by one surety against another for con-
tribution on a note which both had indorsed, and which the
plaintiff herein had paid.  The note was given by C. J.
Mulkey to G. W. Traylor for $1,000, dated February 1,
1913, with interest at 8 per cent. per annum, due one year
after date, and was indorsed on the back by D. P. Butler,
the plaintiff, and Thomas A. Spencer, the defendant.  I
find the paper to be an ordinary negotiable note, which,
being made prior to the law of 1914, must be governed by
the law then in force.

On the same day the note was made and indorsed,
one Mrs. S. E. Mulkey, the wife of the maker and
sister of D. P. Butler, one of the indorsers and the

plaintiff here, signed and delivered to her brother, D. P. Butler, an instrument pledging certain collateral which she held to secure him and Spencer for their indorsement on the note in question, and also to secure Butler on other indorsements for S. J. Mulkey, her husband. With the exception of the Rubye P. Elliott note mentioned in said instrument, which note had been placed in judgment and the judgment paid long before this, none of the notes mentioned in said pledge or assignment were paid by C. J. Mulkey, and it therefore became the duty of D. P. Butler to dispose of the securities and apply the proceeds to the payment of the notes. Whether he wished it or not, this imposed upon him a trust which required of him a little more than ordinary diligence, such as a man might use in his own affairs alone, in the discharge of the duties devolving upon him. The interests of strangers and innocent parties were in his keeping, and it was his duty to use all reasonable care in safeguarding them.

From the testimony before me I am constrained to hold that he has been guilty of gross carelessness, if not willful negligence, in his management of the affairs surrounding the case, and I do not think that the defendant, who had absolutely nothing to do with any part of it, should be required to come in now and help to contribute to any loss which plaintiff may have sustained by reason of his own carelessness. Some of the facts as brought out in the testimony, and upon which I have based my conclusions, are as follows:

In 1907, a little bank was organized at Westminster, S. C., known as the Oconee Bank. At the time of the making of the note here in question, C. J. Mulkey, the maker of the note, was the principal stockholder, president, and cashier; D. A. Mulkey, a brother, with no property, but with $1,000 worth of stock, for which his note was given to the bank and the stock pledged as collateral, was

one director; and D. P. Butler, a brother-in-law, the plaintiff in this action, was the other director—and their affairs are so intermingled with those of the bank that it is impossible to separate them, and it therefore becomes necessary to consider a great mass of testimony involving the conduct of the business of this bank for some years, in order to arrive at a just decision in this case.

Just here I wish to say that, in all my experience, I have never come in contact with a business calling itself a bank that as little accurate information can be obtained from the books as this one. In fact, the witness C. J. Mulkey, who was president and cashier, testified that he nor no one else could tell from the books whether the plaintiff, D. P. Butler, had ever paid for the $1,000 worth of stock which he subscribed for when the bank was organized. His testimony is filled with evasive and uncertain answers to questions of counsel. The testimony of the plaintiff is also of so uncertain a character as to make it very difficult to arrive at a correct conclusion concerning his connection with the whole of this affair. But I find enough that is certain to leave no doubt in my mind that the defendant should not be required to contribute to him for any payment which the plaintiff may have made on the note which the defendant indorsed with him.

In the first place, I find that the collateral pledged to plaintiff and defendant were securities of the bank of which plaintiff was a director, and I am sure that the depreciation in value of said securities was due directly to the mismanagement incident to a failure of the officers and directors to observe the general banking laws of the State as to payment for stock, loans to officers and directors, etc. We find the plaintiff testifying that he received $4,000 worth of the stock of a bank that was represented to be solvent for $208. The question naturally arises: How could this be possible? In this case, very simple. When the stock

was issued, no cash was paid· in. They all gave their notes, and pledged the stock as security. Few, if any, of these notes were ever paid. C. J. Mulkey did say he put in real estate for his $10,000, but when this mortgage was foreclosed, that was a prior lien, the bank realized less than $1,000 out of it. Then what money they obtained they seemed to have loaned it among themselves, and· when the plaintiff was appointed receiver in October, 1914, several of those notes came into his hands and were canceled as worthless.

In the second place, I find that at the time of the making and indorsing of this note the collaterals pledged were amply sufficient to pay the entire indebtedness for which they were put up, if reasonable diligence had been used in collecting them and applying the proceeds. But plaintiff, who was one of the directors in the Oconee Bank and had full notice of all that was going on, permitted the affairs of said bank to be so conducted that the securities depreciated in value and loss resulted. Some few instances. of this are as follows:

On the 1st day of April, 1913, after. the note in question had been given in February, 1913, he assisted in electing D. A. Mulkey as a director in the bank, and permitted the bank to pay C. J· Mulkey, the maker of the note now before me, the sum of $970.35 in cash and to take D. A. Mulkey's note, with the $1,000 worth of stock, as collateral security; on the 30th day of January, 1914, the bank loaned to Mrs. S. E. Mulkey, the wife of the president and cashier, and sister of D. P. Butler, one of the directors, with his consent $736.00 without any security of any kind; they also loaned her the sum of $1,000 and took her note for same without any security; on March 25, 1914, they loaned to C. J. Mulkey, the president and cashier, the sum of $1,000 without any security; also on April 11, 1914, they loaned to him the sum of $200 without security—making a total of $3,906.35 worth of notes for

money loaned to the president and cashier, his wife, and his brother, who was a director, and all of said notes were canceled as worthless by D. P. Butler as receiver. I hesitate to call this by the legal term that seems most appropriate.

In the third place, I find that, acting even in the way that he did, plaintiff realized the sum of $2,108 from the collaterals pledged, and, under the terms of the instrument of writing pledging them, the note in question should have been paid first, and the balance applied as he saw proper.

In the fourth place, I find that his actings and doings as receiver of the Oconee Bank, in so far as they affect the defendant, bear scrutinizing. Just here I will say that plaintiff contends that all that has been passed upon by the Court and approved, and cannot now be reviewed. It is sufficient to say that Spencer was not a party to those proceedings and is not bound by anything contained therein.. But, in addition to that, I find that he has so mixed up his private indorsements and their settlement with his business as receiver in winding up this bank that it is impossible to separate them, and so it is necessary to review the whole matter.

In his report to the Court as receiver, which report is sworn to on October 12, 1915, the following statement appears: "The time certificate, issued by the Oconee Bank to Mrs. S. E. Mulkey and duly assigned to D. P. Butler for certain indorsements, was paid out in the way of settling the notes of Mrs. D. P. Butler to the Oconee Bank, amounting to $1,378, and W. P. Dickson note for $522." This is the certificate mentioned in the instrument previously referred to, and was pledged as collateral for the payment of the specific notes therein named. One of those notes is the one now in suit, and I hold that this note should have been paid out of said collateral first, and after that was done, if he wanted to divert the balance of the proceeds to the payment of the debts of his wife to the bank, that was his own business. Neither his wife's note

nor W. P. Dickson's note was mentioned in the instrument of writing in which this certificate of deposit was pledged to him, and he therefore had no right to use one cent of the proceeds arising from said collateral until the note which he and Spencer indorsed had been paid in full, and I hold that so much of the $1,800 as is necessary must be applied to the payment of this note. Whatever balance is left he may apply as he chooses so far as Spencer is concerned.

I find, also, that as receiver he expended considerable sums in unnecessary litigation. One notable instance was resisting the payment of the note and mortgage which T. N. Carter held. This was clearly unnecesary, and resulted in causing the bank to lose $396.27 in costs and fees paid to Carter's attorneys.

His statement of his account as receiver is not very clear, but I do find a few things that are very clear.

He paid himself at least $280.60 in commissions to which he was not entitled, for the reason that the money upon which they were charged was either collected from himself, or notes in his hands, or was collected by others to whom certain notes were assigned as collateral for debts owing by the bank and applied by them to the debts due to them.

Again, I find that he actually paid to C. J. Mulkey the sum of $90.92 out of the proceeds of the bank, when Mulkey had several notes in the bank canceled because they were worthless. This sum, however small, should have been applied to Mulkey's indebtedness to the bank. So I find that as receiver he paid out wrongly more than twice enough money to have satisfied the note now in suit in full.

I cannot close this decree without holding that there are two elementary principles of law directly applicable to this case. One is that we have here a family affair on one side in the person of the plaintiff and his associates, and an innocent stranger on the other, in the

person of the defendant, and the manner in which this busi-, ness has been manipulated in order to bring this innocent stranger in must be closely scrutinized by the Court as against the relatives.

The other principle, which is specifically applicable, 7    is that to premit the plaintiff to recover in this case would be allowing a party to take advantage of his own wrong, to the injury of an innocent person, and such a position is repugnant to equity and justice.

*Mr. J. R. Earle,* for appellant,    No citations.

*Messrs. Shelor & Hughes,* for respondent, cite: *Case heard by the Court by consent and findings of fact not reviewable on appeal:* 110 S. C., 80; 110 S. C., 92; 109 S. C., 295; 58 S. C., 1; 51 S. C., 560; 50 S. C., 502; 50 S. C.. 110; 100 S. E., 148. *Rule of Court as to printing case not complied with:* 110 S. C., 263.

May 10, 1921.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

For the reasons stated by his Honor, Judge Mauldin, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.